UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARON TYRESE CALDWELL,

        Petitioner,        Case No. 95-80919
                                    Honorable Lawrence P. Zatkoff
                                    Magistrate Judge David R. Grand
v.

UNITED STATES OF AMERICA,

        Respondent.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION
UNDER §2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE [140]**

Before the court is *pro se* Petitioner Daron Caldwell's ("Caldwell") Motion Under §2255 to Vacate, Set Aside, or Correct Sentence [140]. The government has filed a response in opposition to Caldwell's motion [144][1], and Caldwell has filed a reply brief [145]. An Order of Reference [142] was entered on January 31, 2012, referring Caldwell's motion to the undersigned for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.   RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Caldwell's Motion Under §2255 to Vacate, Set Aside, or Correct Sentence [140] be **DENIED** and that a certificate of appealability also be **DENIED**.

---

[1] As Caldwell notes in his reply brief, the government's response to Caldwell's motion, which was due on April 2, 2012, was not filed until April 3, 2012. (Doc. #143, 144). Although untimely filed, the court exercises its discretion to consider the government's response brief as doing so will aid in its evaluation of the merits of Caldwell's motion.

**II.    REPORT**

   **A.    Background**

Caldwell was originally sentenced on September 3, 1996 to a 48-month term of imprisonment for conspiracy to distribute controlled substances, which ran consecutive to another sentence. (Doc. #134). His term of imprisonment was followed by an eight-year term of supervised release. (*Id.*). Caudwell's supervised release began on August 6, 2003. (*Id.*).

According to the terms of the Report on Offender Under Supervision Noncompliance Summary, completed on December 14, 2010 by a United States Probation Officer, Caldwell's supervised release was not served without incident. (*Id.*). On November 28, 2006, the conditions of supervised release were modified to require Caldwell to participate in the home confinement program for 90 days, to attend an anger management counseling program, and to not use or possess alcohol or be in the social company of any person that he knew to be in possession of or visibly affected by alcohol or illegal drugs. (*Id.*).

Also, between September 2010 and December 2010, Caldwell apparently violated the terms of his supervised release in several ways. On September 17, 2010, Pittsburgh police officers stopped an automobile in which an individual named "Caldwell" was a passenger. (*Id.*). The automobile was driven by another resident of Detroit, James Dubose, who had prior felony convictions for drugs and weapons, and the police officers noted that the vehicle smelled of fresh marijuana. (*Id.*). Caldwell did not notify his probation officer of this police contact within 72 hours, as required by the terms of his supervised release, and later denied that he was the passenger in the car. (*Id.*). On November 30, 2010, Caldwell tested positive for marijuana. (*Id.*). Then, on December 10, 2010, Caldwell was arrested in Pennsylvania for possession of heroin and drug paraphernalia and criminal conspiracy. (*Id.*). Pennsylvania law enforcement

officers executed a search warrant on a motel where they believed Caldwell had been staying, where they found marijuana, heroin, digital scales, drug packaging, and accounting materials. (*Id.*). Caldwell did not post bond in Pennsylvania, and it appears that he was transported to the Eastern District of Michigan in the custody of the United States Marshal. (Doc. #136).

In lieu of proceeding with a supervised release violation hearing, Caldwell pled guilty to violating several terms of his supervised release agreement. (Doc. #138 at 1). Specifically, Caldwell pled guilty to violating terms 1 (defendant shall not leave the judicial district without the permission of the court or probation officer), 7 (defendant shall not purchase, possess, use, distribute, or administer any controlled substance), 8 (defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered), 9 (defendant shall not associate with any persons engaged in criminal activity or convicted of a felony, without permission of the probation officer), and 11 (defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer). (*Id.* at 3).[2] As a result, on February 28, 2011, Caldwell was sentenced to 33 months in prison. (*Id.*). Caldwell did not challenge his sentence on direct appeal but, on January 30, 2012, filed the instant motion claiming his guilty plea was the product of ineffective assistance of counsel and that the court failed to properly consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," as was required under 18 U.S.C. §3553(a)(6). (Doc. #140 at 4-8).

---

[2] Caldwell claims that his counsel whispered in his ear at that hearing: "don't worry about this, I got your back. Just let me do my job…when the judge ask[s] you what is your plea?, say, guilty to all violations….I worked out a deal to get you under two years with no supervision to follow." (Doc. #140 at 19). Caldwell also claims that "[p]rior to being sentenced counsel did not provide [him] with a copy of the violation reports, performed no investigation, inquiry and/or research, and neglected to file a sentence memorandum on [Caldwell's] behalf." (*Id.* at 20). However, Caldwell did not order a copy of his guilty plea hearing transcript, and that transcript is not before the court.

3

**B.     Legal Standard**

Under 28 U.S.C. §2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" when "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . ."  28 U.S.C. §2255(a).  The petitioner must demonstrate the existence of "a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure" in order for relief to be obtained.  *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993), *citing Hill v. United States*, 368 U.S. 424, 428 (1962) (internal quotations omitted).  Further, good cause and actual prejudice must be shown if these issues were not brought up on appeal.  *See Harris v. Reed*, 489 U.S. 255, 258 (1989).

**C.     Discussion**

Caldwell presents two main arguments in his motion.  First, he argues that his counsel was ineffective in (a) failing to investigate and contest the validity of Caldwell's alleged supervised release violations, and (b) failing to offer mitigating evidence that supposedly would have resulted in the imposition of a lesser sentence. (Doc. #140 at 4, 5).  Second, he argues that the district court erred in sentencing him to 33 months in prison for violating the terms of his supervised release, claiming that this sentence is excessive in relation to sentences imposed in similar cases. (*Id.* at 26).  Each of these arguments will be considered in turn.

### 1.     *Ineffective Assistance of Counsel*

A claim of ineffective assistance of counsel requires a petitioner to meet a two-part test – he must demonstrate that counsel's representation fell below an objective standard of

reasonableness, and that this deficient performance was prejudicial to the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). For counsel's performance to be deemed deficient, a defendant must overcome the strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance," with "judicial scrutiny of counsel's performance [being] highly deferential." *Id.* at 689. Moreover, "deficient" lawyering requires professional service that was worse than merely "inadequate; rather it . . . [means a performance that] was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original).

With respect to the prejudice prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* at 694. This is equally true in cases where the defendant pleads guilty:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.

*Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### a. *Failure to Investigate Alleged Supervised Release Violations*

In his motion, Caldwell first argues that his attorney was ineffective in failing to investigate and contest the validity of all of the supervised release violations of which Caldwell was accused. (Doc. #140 at 19-22). Caldwell asserts that if his attorney had conducted an investigation into the alleged violations, he would have learned that Caldwell "was only in

violation of two of the five conditions" of his supervised release, not all five, as alleged. (*Id.* at 22-23). Specifically, despite his guilty plea to the violations indicated, Caldwell now alleges that a reasonable investigation would have revealed that he did not violate term 7 (defendant shall not purchase, possess, use, distribute, or administer any controlled substance), term 8 (defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered), or term 9 (defendant shall not associate with any persons engaged in criminal activity or convicted of a felony, without permission of the probation officer). (*Id.* at 21). Caldwell continues to admit, however, that he violated terms 1 (defendant shall not leave the judicial district without the permission of the court or probation officer) and 11 (defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer) of his supervised release. (*Id.* at 22).

Even accepting as true Caldwell's allegations that he did not violate terms 7, 8, or 9 of his supervised release agreement – which seems a stretch[3] – his counsel's actions in purportedly failing to investigate the alleged violations do not amount to ineffective assistance. The court need not reach the question of whether counsel's alleged conduct fell below an objective standard of reasonableness because, even if it did, Caldwell has not established that, but for his attorney's errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694; *see also Hill*, 474 U.S. at 60 (declining to reach performance prong because

---

[3] For example, Caldwell asserts that he did not purchase, possess, use, distribute, or administer any controlled substance in violation of term 7 of his supervised release, (*Id.* at 22), yet offers no explanation for his positive test for marijuana on November 30, 2010. (Doc. #134 at 3). Similarly, Caldwell's argument that he never associated with any persons engaged in criminal activity or convicted of a felony, and that he only associated with people of "impeccable character and status within their communities," (Doc. #140 at 21), ignores that he was stopped with James Dubose, a convicted felon, in September 2010. (Doc. #134 at 3). And, although Caldwell denies that he frequented places where controlled substances are illegally sold, used, distributed, or administered, (Doc. #140 at 21), he does not explain why the allegation that drugs were seized from a motel where officers believed he was staying was false. (*Id.*).

6

defendant did not show that he would have rejected plea agreement but for his counsel's ineffective assistance).

By Caldwell's own admission, he violated at least two of the conditions of his supervised release. (*Id.* at 22). As such, any "investigation" that his counsel would have conducted – no matter how skilled or enthusiastic – would hardly have changed the result of the case. In order for the government to have succeeded at a violation hearing, it need only have established, by a preponderance of the evidence, that Caldwell "violated *a* condition of his supervised release." *United States v. Lowenstein*, 108 F.3d 80, 85 (6th Cir. 1997) (emphasis added). Here, where Caldwell *admits* to violating multiple conditions[4] of his supervised release, and considering the evidence against him on the violations he now disputes, it cannot be said that "there is a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Indeed, Caldwell does not even allege that he would have rejected the proposed plea agreement, but for his attorney's alleged ineffective assistance. As such, Caldwell has not established that he was prejudiced by his counsel's alleged failure to investigate, and his ineffective assistance of counsel claim fails.

          b.     *Failure to Offer Mitigating Evidence Justifying Lesser Punishment*

Caldwell next argues that his attorney was ineffective in failing to obtain and present evidence that he had served a substantial portion of his term of supervised release with "no discrepancies or complications."[5] (*Id.* at 23). According to Caldwell, his attorney's failure to discover and present this alleged "mitigating evidence" in the form of a sentencing

---

[4] Contrary to Caldwell's characterization, none of the charges made against him were for "technical administrative violations." (Doc. 140 at 15). Rather, each charged him with failing to comply with a substantive and specific term of his release.

[5] Caldwell also asserts that his counsel was ineffective in failing to seek a postponement of his Rule 32.1 hearing until after his Pennsylvania case had been resolved. (*Id.* at 23). However, Caldwell does not explain how such a postponement would have benefited him.

7

memorandum, together with his failure to research and cite cases where lesser sentences were imposed in similar cases, resulted in the imposition of a sentence that was excessive, unfair, and disproportionate, particularly given the fact that Caldwell only admits to violating two of the conditions of his supervised release. (*Id.* at 23-24).

Again, however, there is nothing in Caldwell's motion suggesting that, but for defense counsel's conduct, the result of his supervised release violation hearing would have been any different. Even assuming, for a moment, that counsel's actions in failing to present this alleged "mitigating evidence" did fall below an objective standard of reasonableness, Caldwell's ineffective assistance of counsel claim still fails because he has not established that, but for his attorney's errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694; *see also Hill*, 474 U.S. at 60. The Report on Offender Under Supervision Noncompliance Summary presented to the court (Doc. #134) indicates that, with the exception of the November 2006 modifications to the conditions of supervised release and the violations that occurred in September and December 2010, Caldwell's supervised release was otherwise without incident. This is the exact evidence that Caldwell now claims his counsel should have presented to the court. Since that information was before the court, Caldwell cannot show that he was prejudiced by his counsel's failure to raise it in a sentencing memorandum or at the supervised release violation hearing, and his ineffective assistance of counsel claim fails.

    2.    *Disparate Treatment at Sentencing*

Lastly, Caldwell argues that, in revoking his supervised release and sentencing him to 33 months in prison, the district court failed to properly consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," as required by 18 U.S.C. §3553(a)(6). (Doc. #140 at 28-29). Caldwell argues

8

that the court's error resulted in a sentence that was excessive and disproportionate. (*Id.*).

The government correctly notes that Caldwell did not raise this argument on direct appeal, and argues that it is procedurally defaulted as a result. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982). *See also Watt v. United States*, 162 Fed. Appx. 486, 492-93 (6th Cir. 2006) ("Generally, a criminal defendant cannot raise claims on federal collateral attack (e.g., [] a motion to vacate, modify or correct sentence under 28 U.S.C. § 2255) if he did not raise them in his direct federal appeal. 'Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citations and internal quotation marks omitted)). Moreover, "[t]o obtain collateral review, a defendant must clear a significantly higher hurdle than would exist on direct appeal." *Watt*, 162 Fed. Appx. at 493. Caldwell counters by characterizing the "disparate sentencing" issue as part of his ineffective assistance of counsel claim, which may be raised in the first instance in a §2255 motion. (Doc. #145 at 5-6). *See United States v. Urbina*, 459 Fed. Appx. 549 (6th Cir. 2012) ("That [petitioner] did not pursue his ineffective-assistance claim in his initial direct appeal does not bar him from bringing it in a timely collateral proceeding under §2255." (*citing Massaro v. United States*, 538 U.S. 500, 508–09 (2003)). The court finds the government's position to be more persuasive.

A similar issue arose in *Giblin v. United States*, 2010 WL 3039992 (D.N.J. Aug. 03, 2010):

> In addition to his claims of ineffective assistance of counsel, Petitioner argues as a ground for reduction or vacation of his sentence that the Court "did not address all of the 3553(A) sentencing factors to be considered." Petitioner did not address this issue on appeal and is raising this issue for the first time. However, it is well established that a petitioner may not obtain collateral relief based on errors not raised on direct appeal unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors. Petitioner, for the first time, alleges that the Court failed to

9

> consider three factors under 18 U.S.C. § 3553(a) at sentencing. However, Petitioner has not demonstrated adequate cause for failing to raise these claims on direct appeal, nor has he otherwise shown the requisite prejudice resulting from the alleged errors.[11]

*Id.* at *17. Footnote 11 of the *Giblin* decision stated:

> When a petitioner raises a claim of ineffective assistance of counsel for the first time in a collateral attack, he need not demonstrate cause and prejudice. However, here Petitioner claims ineffective assistance of counsel with respect to issues that are separate from those pertaining to the Court's alleged failure to consider all sentencing factors. To the extent that the issues overlap, Petitioner failed to demonstrate ineffective assistance of counsel, and therefore he still must show cause and prejudice to abrogate an otherwise valid procedural default.

*Id.* (internal citations omitted). Though *Giblin* is not binding precedent on this court, it agrees that while there may be some "overlap" in terms of a counsel's performance and a court's consideration of sentencing factors, in general (and here) they present separate issues.[6] Accordingly, the court returns to the procedural default question.

By failing to raise his "disparate sentencing" claim in a direct appeal, Caldwell can only be entitled to habeas relief if he can "first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted). To show cause excusing a procedural default, Caldwell must point to "some objective factor external to the defense" that prohibited him from raising his claim on direct appeal. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). Put another way, cause requires a

---

[6] To the extent such overlap exists here, Caldwell failed to show ineffective assistance of counsel or that his argument has any underlying merit. First, he still admits to violating two substantive conditions of his supervised release, and he presented no evidence or explanation as to his contention that he is truly innocent of the other three violations for which he previously pled guilty. Second, he received a sentence less than the maximum 36 months he could have received for the violations. Finally, although Caldwell's 33-month sentence was 9 months longer than that imposed against the defendant in the somewhat similar case he cites, *U.S. v. Williams*, 2010 WL 1416816 (E.D. Mich. Apr. 2, 2010), *see* Case No. 09-20356, Doc. #11, Caldwell admits being guilty of the additional violation (not present in *Williams*) of leaving the Eastern District of Michigan without permission. That distinction more than supports Caldwell's longer sentence.

showing of some "external impediment" preventing a defendant from raising the issue on direct appeal.  *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).  To show prejudice, Caldwell must demonstrate an error that "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Frady*, 456 U.S. at 170 (emphasis in original).  Failure to show one or the other will preclude review of his claim.  *See Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982).

In this case, Caldwell has not alleged any "objective factor external to the defense" that prevented him from challenging the court's alleged failure to properly consider the §3553 sentencing factors on direct appeal.  The court also notes that while Caldwell argues unpersuasively that his counsel was ineffective *at the trial court level* for the reasons discussed above, he has not alleged that his counsel was ineffective in failing to raise this issue *on appeal*.  In any event, in light of the court's above analysis, it is clear that any such argument would fail on its merits, as well.  As Caldwell has not identified any "objective factor external to the defense" that prevented him from raising this issue on direct appeal, he has not established cause sufficient to overcome the procedural default rule.

Moreover, even if Caldwell had established cause to excuse the procedural default, he has not demonstrated "actual prejudice," nor shown that he was actually innocent of the supervised release violations.  Caldwell pled guilty to all five violations for which he was charged, and still admits his guilt as to two of them.  (*Id.* at 22).  As noted above, there is simply no evidence to suggest that the 33-month sentence imposed by the district court – which was less than the 36-month sentence allowed by law – was constitutionally unreasonable or excessive.

As such, Caldwell has not demonstrated cause and prejudice, and his claim that the district court erred in revoking his supervised release and sentencing him to 33 months in prison

is procedurally defaulted and should be denied.[7]

### III.    CERTIFICATE OF APPEALABILITY

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §2253(c)(1)(A), (B).[8] A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits of the petitioner's claims. *Id.* at 336-37.

Based on this court's recommendation regarding the merits of Caldwell's claim, it also recommends denying Caldwell a certificate of appealability, as jurists of reason would not find the court's resolution of the claims to be debatable.

---

[7] Caldwell also requests an evidentiary hearing on his motion. (Doc. #140 at 13). However, the court may deny a habeas petitioner a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. §2255(b). Here, for all of the reasons set forth above, Caldwell's request for an evidentiary hearing, along with his request for appointment of counsel, is denied.

[8] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2255 Cases in the United States District Courts, 28 U.S.C. §2255, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." In light of this new requirement, the court includes here a recommendation regarding the certificate of appealability issue.

### III.  CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Plaintiff's Motion Under §2255 to Vacate, Set Aside, or Correct Sentence [140] be **DENIED** and that a certificate of appealability also be **DENIED**.

Dated: June 19, 2012  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the

objections.

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 19, 2012.

                                        s/Felicia M. Moses  
                                        FELICIA M. MOSES  
                                        Case Manager